UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| LORI HATFIELD, | |
| Plaintiff, | |
| v. | CAUSE NO.: 2:24-CV-288-TLS |
| FRANK BISIGNANO, Commissioner of the Social Security Administration, | |
| Defendant. | |

**OPINION AND ORDER**

The Plaintiff, Lori Hatfield, seeks review of the final decision of the Commissioner of the Social Security Administration denying her applications for disability insurance benefits and supplemental security income. The Plaintiff argues that the Administrative Law Judge (ALJ) erred in considering her subjective symptoms and failed to discuss her obesity in formulating her residual functional capacity. For the reasons below, the Court affirms the ALJ's decision.

**PROCEDURAL BACKGROUND**

On June 1, 2022, the Plaintiff filed applications for disability insurance benefits and supplemental security income, alleging disability beginning on December 31, 2013. AR 17, ECF No. 8. After the claims were denied initially and on reconsideration, the Plaintiff requested a hearing, which was held before the ALJ on November 3, 2023. *Id.* 17, 31–55. On November 15, 2023, the ALJ issued a written decision, finding the Plaintiff not disabled. AR 17–26. The Plaintiff sought review of the ALJ's decision, and the Appeals Council subsequently denied review. AR 1–6. Thus, the ALJ's decision is the final decision of the Commissioner. *Jozefyk v. Berryhill*, 923 F.3d 492, 496 (7th Cir. 2019). The Plaintiff now seeks judicial review under 42 U.S.C. § 405(g). On August 16, 2024, the Plaintiff filed her Complaint [ECF No. 1] in this

Court, seeking reversal of the Commissioner's final decision and remand for further administrative proceedings. The Plaintiff filed an opening brief, the Commissioner filed a response brief, and the Plaintiff filed a reply brief. ECF Nos. 11, 17, 21.

**THE ALJ'S DECISION**

For purposes of disability insurance benefits and supplemental security income, a claimant is "disabled" if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see* 20 C.F.R. § 404.1505(a).[1] To be found disabled, a claimant must have a severe physical or mental impairment that prevents her from doing not only her previous work, but also any other kind of gainful employment that exists in the national economy, considering her age, education, and work experience. 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1505(a). An ALJ conducts a five-step inquiry to determine whether a claimant is disabled. 20 C.F.R. § 404.1520.

The first step is to determine whether the claimant is no longer engaged in substantial gainful activity. *Id.* § 404.1520(a)(4)(i), (b). In this case, the ALJ found that the Plaintiff had not engaged in substantial gainful activity since December 31, 2013, the alleged onset date. AR 19.

At step two, the ALJ determines whether the claimant has a "severe impairment." 20 C.F.R. § 404.1520(a)(4)(ii), (c). Here, the ALJ determined that the Plaintiff has the severe impairments of degenerative disc disease of the lumbar spine with mild foraminal stenosis; hip bursitis; and obesity. AR 20.

---

[1] The Court cites the disability insurance benefits statutes and regulations, which are largely identical to those applicable to supplemental security income. *See Barnhart v. Thomas*, 540 U.S. 20, 24 (2003).

Step three requires the ALJ to consider whether the claimant's impairment(s) "meets or equals one of [the] listings [in appendix 1 to subpart P of part 404 of this chapter]." 20 C.F.R. § 404.1520(a)(4)(iii), (d). If a claimant's impairment(s), considered singly or in combination with other impairments, meets or equals a listed impairment, the claimant will be found disabled without considering age, education, and work experience. *Id*. § 404.1520(a)(4)(iii), (d). Here, the ALJ found the Plaintiff does not have an impairment or combination of impairments that meets or medically equals a listing, indicating that she considered Listings 1.15, 1.16, and 1.18. AR 22.

When a claimant's impairment(s) does not meet or equal a listing, the ALJ determines the claimant's "residual functional capacity" (RFC), which "is an administrative assessment of what work-related activities an individual can perform despite [the individual's] limitations." *Dixon v. Massanari*, 270 F.3d 1171, 1178 (7th Cir. 2001); *see* 20 C.F.R. § 404.1520(e). In this case, the ALJ assessed the following RFC:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant can frequently climb ramps and stairs, balance, stoop, kneel, crouch, and crawl. The claimant can occasionally climb ladders, ropes, and scaffolds.

AR 22.

The ALJ then moves to step four and determines whether the claimant can do her past relevant work in light of the RFC. 20 C.F.R. § 404.1520(a)(4)(iv), (f). In this case, the ALJ found that the Plaintiff has no past relevant work. AR 24 (citing 20 C.F.R. § 404.1565).

If the claimant is unable to perform past relevant work, the ALJ considers at step five whether the claimant can "make an adjustment to other work" in the national economy given the RFC and the claimant's age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v), (g). Here, the ALJ found that the Plaintiff is capable of performing other jobs in the national

3

economy of sales attendant, routing clerk, and cleaner. AR 25. The claimant bears the burden of proving steps one through four, whereas the burden at step five is on the ALJ. *Zurawski v. Halter*, 245 F.3d 881, 885–86 (7th Cir. 2001); *see* 20 C.F.R. § 404.1512.

## STANDARD OF REVIEW

The Social Security Act authorizes judicial review of the agency's final decision. 42 U.S.C. § 405(g). On review, a court considers whether the ALJ applied the correct legal standard and whether the decision is supported by substantial evidence. *See Summers v. Berryhill*, 864 F.3d 523, 526 (7th Cir. 2017); 42 U.S.C. § 405(g). A court will affirm the Commissioner's findings of fact and denial of disability benefits if they are supported by substantial evidence. *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (citations omitted). Even if "reasonable minds could differ" about the disability status of the claimant, the court must affirm the Commissioner's decision as long as it is adequately supported. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008) (quoting *Schmidt v. Astrue*, 496 F.3d 833, 842 (7th Cir. 2007)).

The court considers the entire administrative record but does not "reweigh evidence, resolve conflicts, decide questions of credibility, or substitute [the court's] own judgment for that of the Commissioner." *McKinzey v. Astrue*, 641 F.3d 884, 889 (7th Cir. 2011) (quoting *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003)). Nevertheless, the court conducts a "critical review of the evidence," and "the decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues." *Lopez*, 336 F.3d at 539 (citations omitted); *see Moore v. Colvin*, 743 F.3d 1118, 1121 (7th Cir. 2014) ("A decision that lacks adequate discussion of the issues will be remanded."). The ALJ is not required to address every piece of evidence or

testimony presented, but the ALJ "has a basic obligation to develop a full and fair record and must build an accurate and logical bridge between the evidence and the result to afford the claimant meaningful judicial review of the administrative findings." *Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2014) (cleaned up). However, "if the Commissioner commits an error of law," remand is warranted "without regard to the volume of evidence in support of the factual findings." *White ex rel. Smith v. Apfel*, 167 F.3d 369, 373 (7th Cir. 1999) (citing *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997)).

## ANALYSIS

Seeking reversal and remand, the Plaintiff first argues the ALJ violated Social Security Ruling 16-3p by relying solely on objective evidence to find that the Plaintiff's statements concerning her subjective symptoms were not entirely consistent with the record. The Plaintiff also argues the ALJ violated the requirements of Social Security Ruling 96-8p by failing to consider her obesity and other impairments in combination. The Commissioner responds that the ALJ did not error and issued a decision supported by substantial evidence.

**A.    Social Security Ruling 16-3p—Subjective Symptoms**

SSR 16-3p requires the ALJ to "consider all of the individual's symptoms, including pain, and the extent to which the symptoms can reasonably be accepted as consistent with the objective medical and other evidence in the individual's record." SSR 16-3p, 2017 WL 5180304, at *2 (Oct. 25, 2017). The "decision must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." *Id.* at *10.

The Plaintiff testified that she had pain "every day, all day." AR 40. If she sits or stands more than ten minutes, her back would "lock up." *Id.* On an average day, she could walk for five minutes, and if she went grocery shopping, she always leaned on a cart because walking hurt. AR 41, 49. On bad days, she used a motorized cart to shop. *Id.* 49. When she washed dishes, she leaned on the sink to relieve pressure on her back and her husband had to help her with household chores. *Id.* 44–45. In a function report, the Plaintiff stated she had difficulty standing and that bending was painful. *Id.* 196. She also reported that her husband helped with cooking and cleaning. *Id*. 197–98. She could walk only thirty feet. *Id.* 201. She had difficulty focusing when the pain was "real bad." *Id*. She consistently reported to her doctors that her symptoms were worsening over time. *Id.* 284, 304, 310, 315. And, notwithstanding her severe needle phobia, she underwent injections for her pain. *Id.* 304, 308, 325. However, the procedure provided relief for only one week, after which her pain started to return. *Id.* 337.

In the RFC determination, the ALJ set forth in detail this testimony regarding the Plaintiff's low back pain. AR 23. The ALJ reviewed the medical evidence of record, including treatment notes from March 2015, the March 2015 MRI results, the May 2022 updated lumbar MRI, and August 2022 imagining of the Plaintiff's hips. *Id.* The ALJ considered the records from Lakeshore Bone & Joint from March 2015 through October 2022, finding that the course of treatment "has remained conservative with physical therapy, stretches, and injections, as well as minimal instances of an antalgic gate." *Id.* The ALJ noted "the majority of these examinations document no tenderness, 5/5 strength, intact sensations, negative straight leg test, and normal gait and station with the claimant ambulating unassisted." *Id.* The ALJ also reviewed the January 2023 consultative examination. *Id.* 23–24.

The ALJ then found that the Plaintiff's medically determinable impairments could reasonably be expected to cause her alleged symptoms but that the Plaintiff's statements concerning the intensity, persistence, and limiting effects of the symptoms are "not entirely consistent" with the record. *Id.* 24. In support, the ALJ first noted that the Plaintiff mainly received conservative and routine treatment since the onset date. *Id.* The ALJ explained that, although the clinical findings showed decreased range of motion and instances of antalgic gait and positive straight leg raise, the "issues appear to be controlled/stable with treatment as clinical examinations show no significant worsening in the claimant's functional abilities." *Id.* The ALJ stated that the Plaintiff's reported limitations are accommodated by the RFC. *Id.*

Next, the ALJ discussed the medical opinions and prior administrative findings, finding persuasive the state agency opinions limiting the Plaintiff to the light exertional level with frequent postural limitations, except for occasional climbing of ladders, ropes, and scaffolds. *Id.* (citing Exs. 1A, AR 56; 4A, AR 64; 6A, AR 71; 7A, AR 78). The ALJ found the opinions consistent with and supported by the evidence of record. *Id.* More specifically, the ALJ found that the limitation to light work with postural limitations accommodates the Plaintiff's low back and hip pain, her decreased range of motion, and BMI above 30. *Id.* The ALJ found that since most of the examinations of record reported full strength and normal/intact gait, greater restrictions are not supported. *Id.* (citing Exs. 2F/5 (6/3/2022), AR 328; 4F/5 (10/6/2022), AR 338; 5F/2 (3/16/2015), AR 346; 5F/4 (3/16/2015), AR 348; 5F/11 (3/9/2015), AR 355; 5F/15 (3/9/2015), AR 359; 5F/35 (10/6/2022), AR 379; 5F/37 (6/30/2022), AR 381; 5F/39 (6/3/2022), AR 383; 5F/42 (5/19/2022), AR 386; 5F/46 (4/28/2022), AR 390; 5F/49 (6/27/2019), AR 393; 5F/51 (6/5/219), AR 395; 8F (1/21/2023), AR 405–17; 9F/2 (9/13/2023), AR 419; 9F/7

7

(9/7/2023), AR 424; 9F/16 (1/9/2023), AR 433; 9F/28 (12/6/2022), AR 445; 9F/32 (11/21/2022), AR 449; 9F/42 (10/17/2022), AR 459).

The Plaintiff contends that the ALJ made an error of law because the ALJ's rationale contradicts the requirements of SSR 16-3p. The Plaintiff first argues that, since SSR 16-3p prohibits an ALJ from relying solely on objective findings to discount a claimant's subjective statements, the ALJ erred by resting the entire evaluation of the Plaintiff's subjective statements on the course and efficacy of her treatment. "In evaluating the intensity and persistence of [the claimant's] symptoms, including pain, [the ALJ] will consider all of the available evidence, including [the claimant's] medical history, the medical signs and laboratory findings, and statements about how [the claimant's] symptoms affect [her]." 20 C.F.R. § 404.1529(a). The ALJ must consider all the available evidence from medical sources, nonmedical sources, and medical opinions. *Id.* § 404.1529(c)(1). However, the Agency "will not evaluate an individual's symptoms based solely on objective medical evidence unless the objective medical evidence supports a finding that the individual is disabled." SSR 16-3p, 2017 WL 5180304, at *5; *see* 20 C.F.R. § 404.1529(c)(2).

"Objective medical evidence is evidence obtained from the application of medically acceptable clinical and laboratory diagnostic techniques, such as evidence of reduced joint motion, muscle spasm, sensory deficit or motor disruption." 20 C.F.R. § 404.1529(c)(2). This type of evidence "is a useful indicator to assist . . . in making reasonable conclusions about the intensity and persistence of [the claimant's] symptoms and the effect those symptoms, such as pain, may have on [the claimant's] ability to work." 20 C.F.R. § 404.1529(c)(2); *see* SSR 16-3p, 2017 WL 5180304, at *5. The ALJ must also consider "other evidence" the claimant submits about her symptoms, *id.* § 404.1529(c)(3). This other evidence includes "any symptom-related

8

functional limitations and restrictions" reported by medical or nonmedical sources that can reasonably be accepted as consistent with the objective and other medical evidence. *Id.* The ALJ must "consider all the evidence presented, including information about [the claimant's] prior work record, [the claimant's] statements about [her] symptoms, evidence submitted by [her] medical sources, and observations by [SSA] employees and [others]." *Id.* The regulations provide the following factors to be considered relevant to a claimant's symptoms:

> (i) Your daily activities;
> (ii) The location, duration, frequency, and intensity of your pain or other symptoms;
> (iii) Precipitating and aggravating factors;
> (iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms;
> (v) Treatment, other than medication, you receive or have received for relief of your pain or other symptoms;
> (vi) Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and
> (vii) Other factors concerning your functional limitations and restrictions due to pain or other symptoms.

*Id.* An ALJ's subjective symptom assessment is entitled to great deference, and it should be upheld unless patently wrong. *See Summers v. Berryhill*, 864 F.3d 523, 528 (7th Cir. 2017); *Schmidt v. Astrue*, 496 F.3d 833, 843 (7th Cir. 2017).

The Plaintiff is incorrect that the ALJ only considered objective evidence in assessing the RFC as the ALJ also discussed the "other evidence" that must be considered. As the Commissioner notes in his response brief, the ALJ considered the following factors: (1) the Plaintiff's subjective statements at the hearing and in her functions reports, including statements about her activities of daily living; (2) the objective medical evidence pertaining to her impairments, including both positive and largely negative or mild examination results and imaging; (3) the Plaintiff's treatment history, including her "conservative care" mostly with

Lakeshore Bone & Joint Institute and consisting of physical therapy, stretching, and some injections; (4) medications and non-medications, including physical therapy and injections; (5) factors that aggravated her lower back pain, including standing, walking for long periods of time, and lifting, and factors that alleviated the pain, including hot showers, stretching, physical therapy, and injections; and (6) the record medical opinions, none of which assessed greater functional limitations than those found by the ALJ. *Id.* 23–24. Thus, contrary to the Plaintiff's assertion, the ALJ did not make "a single conclusory statement" that the Plaintiff's statements were not consistent with the evidence. Pl. Br. 8, ECF No. 11. To the extent the Plaintiff contends that her statements were "uncontradicted," she does not specify what evidence the ALJ overlooked. *Id.* 8–9.

The Plaintiff also argues that the ALJ mischaracterized the record and failed to develop a fair and complete record. Specifically, the Plaintiff contends that the record reflects a worsening of symptoms over time; that her doctor indicated that she had failed conservative treatment, eventually requiring bilateral facet steroid injection, *see* AR 325 (8/15/2022 surgical report from bilateral lumbar facet steroid injection); and that the record shows that the Plaintiff did not receive more aggressive treatment earlier because pain medication caused nausea, she was afraid of the possible side effects of narcotic medication, and she had a severe needle phobia, *see* AR 48–49, 203, 304, 308. The Plaintiff argues that the ALJ ignored this evidence. *See Moore*, 743 F.3d at 1123 (requiring that the ALJ "confront" evidence that undermines her conclusions and explain why the evidence was rejected); *see also Scrogham v. Colvin*, 765 F.3d 685, 698 (7th Cir. 2014) (finding "the ALJ identified pieces of evidence in the record that supported her conclusion that [the plaintiff] was not disabled, but she ignored related evidence that undermined

her conclusion" and that the "'sound-bite' approach to record evaluation is an impermissible methodology for evaluating the evidence").

As for her worsening symptoms, the Plaintiff cites several records, without discussion, to show that her symptoms were "worsening over time." Pl. Br. 8. Most of the records are the Plaintiff's general report that her symptoms have worsened over time. *See* AR 284 (3/10/2015 MRI report) ("Low back pain for 2 years. Worse over the past 3 months."); AR 304 (6/3/2022) ("Since the onset, she reports the problem is getting worse."); AR 310 (4/28/2022) ("This has been going on for years, but progressively gotten worse."); AR 315 (6/5/2019) ("Since the onset, she reports the problem is getting worse."); AR 325 (8/15/2022 summary following the lumbar facet steroid injection) ("She has failed a reasonable conservative course and presents today for injections under fluoroscopy."). The Plaintiff also cites a January 8, 2023 record for treatment of neck pain that began in October 2022 after lifting heavy objects at home, but there is no discussion of her back pain. *See* AR 432. While consistent, these general statements by the Plaintiff reporting the history of her condition provide no information about her limitations.

In contrast, the ALJ cited the following records as examination reports showing no tenderness, 5/5 strength, intact sensations, negative straight leg tests, and normal gait and station with the Plaintiff ambulating unassisted, which the ALJ found did not support greater restrictions than set forth in the RFC. AR 23, 24 (citing Exs. 2F/5 (6/3/2022), AR 328; 4F/5 (10/6/2022), AR 338; 5F/2 (3/16/2015), AR 346; 5F/4 (3/16/2015), AR 348; 5F/11 (3/9/2015), AR 355; 5F/15 (3/9/2015), AR 359; 5F/35 (10/6/2022), AR 379; 5F/37 (6/30/2022), AR 381; 5F/39 (6/3/2022), AR 383; 5F/42 (5/19/2022), AR 386; 5F/46 (4/28/2022), AR 390; 5F/49 (6/27/2019), AR 393; 5F/51 (6/5/219), AR 395; 8F (1/21/2023), AR 405–17; 9F/2 (9/13/2023), AR 419; 9F/7 (9/7/2023), AR 424; 9F/16 (1/9/2023), AR 433; 9F/28 (12/6/2022), AR 445; 9F/32 (11/21/2022),

AR 449; 9F/42 (10/17/2022), AR 459).[2] In contrast to the cases cited by the Plaintiff, *see Moore*, 743 F.3d at 1123; *Scrogham*, 765 F.3d at 698, the ALJ made these findings while also acknowledging favorable evidence that physical examinations regularly noted decreased range of motion as well as minimal instances of an antalgic gait. AR 23. The Plaintiff does not address these records, dispute the ALJ's characterization of these records, or identify records the ALJ failed to consider.

The Plaintiff next argues that the ALJ erred by characterizing her treatment, which included steroid injections, as "conservative" because her doctor noted that she "failed conservative treatment" leading to the decision to undergo steroid injections. Pl. Br. 6 (citing AR 325); AR 23–24. The ALJ's characterization of the steroid injections as conservative treatment is consistent with the Seventh Circuit Court of Appeals' discussion of steroid injections in this same disability determination context. *See Prill v. Kijakazi*, 23 F.4th 738, 749, 749 n.2 (7th Cir. 2022) (affirming that treatment was appropriately characterized as conservative when the most aggressive treatment received is injections (citing *Olsen v. Colvin*, 551 F. App's 868, 875 (7th Cir. 2014); *Singh v. Apfel*, 222 F.3d 448, 450 (8th Cir. 2000); *Burnam v. Colvin*, 525 F. App'x 461, 464–65 (7th Cir. 2013))); *Simila v. Astrue*, 573 F.3d 503, 519 (7th Cir. 2009) (declining to reconsider the ALJ's finding that treatment with pain medications and injections was "relatively conservative" in light of the deference shown to an ALJ's factual determinations). Thus, it was proper for the ALJ to describe the Plaintiff's treatment that included injections as conservative.

"[I]f the frequency or extent of the treatment sought by an individual is not comparable with the degree of the individual's subjective complaints, . . . we may find the alleged intensity

---

[2] Some exhibits are records of treatment for other maladies with no discussion of her back or hip pain. *See* Ex. 9F/2, AR 419 (9/13/2023 telehealth follow-up for viral symptoms); Ex. 9F/7, AR 424 (9/7/2023 telehealth visit regarding allergies); Ex. 9F/16, AR 433 (1/9/2023 neck pain beginning in October 2022); Ex. 9F/28, AR 445 (12/6/2022 flu symptoms).

and persistence of an individual's symptoms are inconsistent with the overall evidence of record." SSR 16-3p, 2017 WL 5180304, at *9. Thus, it was also proper for the ALJ to consider that conservative treatment in evaluating the Plaintiff's subjective statements. *See Sienkiewicz v. Barnhart*, 409 F.3d 798, 803–04 (7th Cir. 2005) (finding the ALJ adequately explained his consideration of the plaintiff's subjective symptoms, including describing them as "routine and conservative"); *Simila*, 573 F.3d at 519 (noting the deference given to the administrative factfinder on judicial review, as well as the regulatory guidance instructing the ALJ to consider evidence such as the level of treatment received).

Finally, the Plaintiff argues that the ALJ failed to address the reasons why the Plaintiff did not receive other treatment that the ALJ "expected." Pl. Br. 7. An ALJ "will consider and address reasons for not pursing treatment that are pertinent to an individual's case." SSR 16-3p, 2017 WL 5180304, at *10. As argued by the Defendant, the ALJ did not find that the Plaintiff should have received more aggressive treatment, that she avoided treatment, or that she failed to follow prescribed treatment. *See* AR 23–24. Rather, the ALJ noted only that the Plaintiff received conservative treatment. And, as explained above, the case law supports the ALJ's characterization of the Plaintiff's treatment, including the steroid injections, as "conservative treatment" notwithstanding her doctor's statement that she "failed conservative treatment" before getting the injections.

"While the law requires an ALJ to weigh all credible evidence and make unbiased factual findings, it does not compel the ALJ to accept wholly the claimant's perception of disability." *Cass v. Shalala*, 8 F.3d 552, 555 (7th Cir. 1993); *Johnson v. Barnhart*, 449 F.3d 804, 805 (7th Cir. 2006) (finding the medical evidence revealed that the plaintiff's impairment had less impact on her ability to work than could be inferred from her testimony). Here, the ALJ considered all

13

the evidence, not just the objective evidence, in determining the extent of the Plaintiff's limitations. The ALJ also clearly articulated her reasoning so the Plaintiff and subsequent reviewers, including this Court, can assess how she evaluated the Plaintiff's symptoms. The Plaintiff has not shown that the ALJ erred in considering the evidence of record or that she did not consider the entire record. *See* Pl. Reply 3, ECF No. 21. The Plaintiff has not pointed to any relevant factors under SSR 16-3p that would support a finding of disability. Although the Plaintiff protests in her reply brief that she is not asking the Court to reweigh the evidence, the Court nevertheless reiterates that the Court will not reweigh the evidence considered by the ALJ.

"Time and time again, [the Seventh Circuit has] emphasized that social-security adjudicators are subject to only the most minimal of articulation requirements." *Warnell v. O'Malley*, 97 F.4th 1050, 1053 (7th Cir. 2024). The ALJ must "provide an explanation for how the evidence leads to their conclusions that is 'sufficient to allow us, as a reviewing court, to assess the validity of the agency's ultimate findings and afford [the appellant] meaningful judicial review.'" *Id.* at 1054 (quoting *Moore*, 743 F.3d at 1121). The court will "consider an ALJ's opinion to be adequately explained so long as it does not 'lack[] adequate discussion of the issues.'" *Id.* (same). Here, the ALJ's assessment of the Plaintiff's subjective symptoms and RFC assessment more than satisfied that minimal articulation standard. Moreover, the ALJ is not required to specify which of the claimant's statements she accepted and which she did not. *See Shideler v. Astrue*, 688 F3d 306, 312 (7th Cir. 2012) (finding that the ALJ need not specify which of the claimant's statements were not sufficiently supported by the substantial record evidence (citing *Jens v. Barnhart*, 347 F.3d 209, 213–14 (7th Cir. 2003))); *Sawyer v. Colvin*, 512 F. App'x 603, 608 (7th Cir. 2013) ("Credibility assessments need not be explicit, or particularized to specific testimony." (cleaned up)).

B.     **Social Security Ruling 96-8p—Obesity**

The RFC is a measure of what an individual can do despite her limitations. *Young v. Barnhart*, 362 F.3d 995, 1000–01 (7th Cir. 2004); 20 C.F.R. § 404.1545(a)(1). The "RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996). The relevant evidence of the individual's ability to do work-related activities includes the claimant's medical history; medical signs and laboratory findings; the effects of treatment; reports of daily activities; lay evidence; recorded observations; medical source statements; the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment; evidence from attempts to work; need for a structured living environment; and work evaluations, if available. *Id*. at *5. The determination of a claimant's RFC is a legal decision rather than a medical one. *Thomas v. Colvin*, 745 F.3d 802, 808 (7th Cir. 2014) (citing 20 C.F.R. § 404.1527(d)).

Social Security Ruling 19-2p, which addresses the evaluation of cases involving obesity, acknowledges that a claimant's obesity, in combination with other impairments, may increase the severity or functional limitations of the other impairment. SSR 19-2p 2019 WL 2374244, *2 (May 20, 2019). The Ruling provides that, at step two of the sequential analysis, the ALJ must consider the severity of the claimant's obesity, and, at step three, the ALJ must evaluate obesity under the listings. *Id.* at *3–4. The Ruling also places an affirmative duty on the ALJ to consider the limiting effects of obesity in combination with a claimant's other impairments in assessing the claimant's RFC. *Id.* at *4.

Here, the Plaintiff recognizes that the ALJ found her obesity to be a severe impairment at step two and found her obesity did not meet or medically equal a listed impairment at step three. But the Plaintiff argues that the ALJ erred when she "entirely omitted" any analysis of the Plaintiff's obesity by relying on the opinions of the state agency medical consultants to determine the Plaintiff could perform light work. Pl. Br. 10–11. This is an incorrect statement of the ALJ's decision because the ALJ referenced the Plaintiff's BMI in formulating the RFC. Finding the opinions of the state agency medical consultants persuasive, the ALJ explained, "Specifically, a limitation to light work with postural limitations accommodates for reports of low back pain and hip pain, along with exam findings of decreased range of motion and BMIs above 30." AR 24. This reference was sufficient to show the ALJ considered the impact of the Plaintiff's obesity in combination with her reports of low back and hip pain as well as the findings of reduced range of motion. *See Warnell*, 97 F.4th at 1053 ("Time and time again, [the Seventh Circuit has] emphasized that social-security adjudicators are subject to only the most minimal of articulation requirements.").

Moreover, the state agency medical consultants on whose opinions the ALJ relied specifically noted the Plaintiff's BMI. AR 24, 60, 75. On reconsideration, Dr. Eskonen also noted the Plaintiff's height and weight in addition to her BMI. AR 75. Thus, by including limitations in the RFC based on the Plaintiff's BMI and by relying on state agency medical consultants who considered the Plaintiff's BMI and weight, the ALJ factored the Plaintiff's obesity into the RFC finding. *See Skarbek v. Barnhart*, 390 F.3d 500, 504 (7th Cir. 2004) ("[T]he ALJ adopted the limitations suggested by the specialists and reviewing doctors, who were aware of Skarbek's obesity. Thus, although the ALJ did not explicitly consider Skarbek's obesity, it was factored indirectly into the ALJ's decision a part of the doctor's opinions."); *Pepper v.*

*Colvin*, 712 F.3d 351, 364 (7th Cir. 2013) ("We agree with Pepper that the ALJ did not specifically undertake such an analysis. We have held, however, that this type of error may be harmless when the RFC is based on limitations identified by doctors who specifically noted obesity as a contributing factor to the exacerbation of other impairments."); *Hoyt v. Colvin*, 553 F. App'x 625, 628 (7th Cir. 2014) ("[T]he ALJ indirectly accounted for Hoyt's obesity by relying on the medical opinions of state-agency physicians who evaluated his height and weight.").

Regarding the Plaintiff's comment that the state agency medical consultants did not specifically list obesity as an impairment or provide an analysis of how obesity was factored into the medical opinions, the Plaintiff cites no law for such a requirement. As set forth above, the Seventh Circuit has found it sufficient that the medical consultant was aware of the claimant's BMI. *See William S. v. O'Malley*, No. 3:23-CV-23, 2024 WL 3439604, at *4–5 (S.D. Ind. Mar. 21, 2024) (finding that merely because the reviewing medical consultants did not expressly reference certain abnormal evidence does not mean they did not consider it). The Plaintiff has not shown reversible error as to the ALJ's consideration of her obesity in formulating the RFC.

## CONCLUSION

For the reasons stated above, the Court DENIES the relief sought in the Plaintiff's Brief [ECF No. 11] and AFFIRMS the decision of the Commissioner of the Social Security Administration. The Court DIRECTS the Clerk of Court to ENTER JUDGMENT against the Plaintiff Lori Hatfield and in favor of the Commissioner of the Social Security Administration.

SO ORDERED on September 19, 2025.

                                                s/ Theresa L. Springmann
                                                JUDGE THERESA L. SPRINGMANN
                                                UNITED STATES DISTRICT COURT